No. 2024-1396

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

US INVENTOR, INC., NATIONAL SMALL BUSINESS UNITED,

Plaintiffs-Appellants,

v.

UNITED STATES PATENT AND TRADEMARK OFFICE,
KATHERINE K. VIDAL, Under Secretary of Commerce for Intellectual Property
and Director of the United States Patent and Trademark Office,

Defendants-Appellees.

On Appeal from the United States District Court
for the District of Columbia in Case No. 1:22-cv-2218,
Judge John D. Bates

## BRIEF FOR APPELLEES

*Of Counsel:*

FARHEENA Y. RASHEED
*Acting Solicitor*

MICHAEL S. FORMAN
*Associate Solicitor*
*Office of the Solicitor*
*U.S. Patent and Trademark Office*
*Mail Stop 8, P.O. Box 1450*
*Alexandria, Virginia 22313*
*(571) 272-9035*

BRIAN M. BOYNTON
*Principal Deputy Assistant*
*Attorney General*

JOSHUA M. SALZMAN
WEILI J. SHAW
*Attorneys, Appellate Staff*
*Civil Division, Room 7240*
*U.S. Department of Justice*
*950 Pennsylvania Ave., NW*
*Washington, DC 20530*
*(202) 514-1371*

# TABLE OF CONTENTS

**Page**

STATEMENT OF RELATED CASES ................................................................. ix

STATEMENT OF JURISDICTION ......................................................... 1

STATEMENT OF THE ISSUES ............................................................. 1

STATEMENT OF THE CASE.................................................................. 2

    A.    Statutory and Regulatory Background ................................. 2

    B.    Prior Proceedings ................................................. 8

SUMMARY OF ARGUMENT............................................................... 12

ARGUMENT ..................................................................................... 14

I.    Standard of Review................................................................. 14

II.    Plaintiffs' Claims Are Moot...................................................... 15

III.    Plaintiffs Lack Standing to Challenge the Denial of Their Petition for Rulemaking ................................................................. 20

    A.    Plaintiffs Bear the Burden of Establishing Injury in Fact, Causation, and Redressability ........................................... 20

    B.    Plaintiffs Cannot Identify an Injury in Fact Caused by the Challenged Agency Action or Which Is Likely to Be Redressed by a Grant of the Petition .................................................. 22

    C.    Plaintiffs' Contrary Arguments Lack Merit......................... 37

CONCLUSION .................................................................................. 40

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Cases:**                                                                    **Page(s)**

*ABS Glob., Inc. v. Cytonome/ST, LLC,*
  984 F.3d 1017 (Fed. Cir. 2021)..............................................................29

*Advanced Bionics, LLC v. MED-EL Elektromedizinische Geräte GmbH,*
  No. IPR2019-01469, Paper 6 (P.T.A.B. Feb. 13, 2020) .........................6

*Already, LLC v. Nike, Inc.,*
  568 U.S. 85 (2013) ...............................................................................15

*American Horse Prot. Ass'n v. Lyng,*
  812 F.2d 1 (D.C. Cir. 1987) .................................................................16

*Apple Inc. v. Fintiv, Inc.,*
  No. IPR2020-00019, 2020 WL 2126495 (P.T.A.B. Mar. 20, 2020)............... 6, 32

*Apple Inc. v. Vidal,*
  63 F.4th 1 (Fed. Cir. 2023), *cert. denied sub nom. Intel Corp. v. Vidal,*
  144 S. Ct. 548 (2024) ............................................. 5, 8, 21, 22, 32, 33, 34, 35, 36

*Arpaio v. Obama,*
  797 F.3d 11 (D.C. Cir. 2015) ........................................................ 22, 32

*ASARCO Inc. v. Kadish,*
  490 U.S. 605 (1989) .............................................................................33

*Cierco v. Mnuchin,*
  857 F.3d 407 (D.C. Cir. 2017) .............................................................29

*City of Los Angeles v. Lyons,*
  461 U.S. 95 (1983) ...............................................................................24

*Clapper v. Amnesty Int'l USA,*
  568 U.S. 398 (2013) .......................................... 11, 12, 29, 30, 31, 40

*Cuozzo Speed Techs., LLC v. Lee,*
  579 U.S. 261 (2016) .........................................................................2, 3

*Food & Drug Admin. v. Alliance for Hippocratic Med.*,
    No. 23-235, 2024 WL 2964140 (U.S. June 13, 2024)..........................................29

*Food & Water Watch, Inc. v. Vilsack*,
    808 F.3d 905 (D.C. Cir. 2015) .............................. 22, 25, 26, 31, 32, 38

*General Plastic Indus. Co. v. Canon Kabushiki Kaisha*,
    No. IPR2016-01357, Paper 19 (P.T.A.B. Sept. 6, 2017) .......................6

*Hardaway v. District of Columbia Hous. Auth.*,
    843 F.3d 973 (D.C. Cir. 2016) .................................................................14

*Hunt v. Washington State Apple Advert. Comm'n*,
    432 U.S. 333 (1977) ...................................................................................23

*International Union, United Mine Workers of Am., In re*,
    231 F.3d 51 (D.C. Cir. 2000) ...................................................................15

*JTEKT Corp. v. GKN Auto. LTD.*,
    898 F.3d 1217 (Fed. Cir. 2018)................................................................34

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ............................................................................ 21, 23

*Massachusetts v. EPA*,
    549 U.S. 497 (2007) ............................................................................ 16, 21

*Merritt v. Wilkie*,
    965 F.3d 1357 (Fed. Cir. 2020)................................................................15

*Mine Reclamation Corp. v. FERC*,
    30 F.3d 1519 (D.C. Cir. 1994) .................................................................15

*Mylan Labs. Ltd. v. Janssen Pharmaceutica, N.V.*,
    989 F.3d 1375 (Fed. Cir. 2021), *cert. denied*, 142 S. Ct. 874 (2022)............. 3-4, 4

*NHK Spring Co. v. Intri-Plex Techs., Inc.*,
    No. IPR2018-00752, Paper 8 (P.T.A.B. Sept. 12, 2018) ........................6

*Platte River Whooping Crane Critical Habitat Maint. Tr. v. FERC*,
  962 F.2d 27 (D.C. Cir. 1992) .................................................. 31, 39-40

*Prasco, LLC v. Medicis Pharm. Corp.*,
  537 F.3d 1329 (Fed. Cir. 2008)............................................................34

*Public Citizen, Inc. v. National Highway Traffic Safety Admin.*,
  489 F.3d 1279 (D.C. Cir. 2007) ............................................... 24, 25, 37

*Schlesinger v. Reservists Comm. to Stop the War*,
  418 U.S. 208 (1974) ............................................................................20

*Sicom Sys., Ltd. v. Agilent Techs., Inc.*,
  427 F.3d 971 (Fed. Cir. 2005)......................................................... 14-15

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016) ............................................................................22

*Summers v. Earth Island Inst.*,
  555 U.S. 488 (2009) ..................................................... 20, 21, 22, 24

*Susan B. Anthony List v. Driehaus*,
  573 U.S. 149 (2014) ............................................................................33

*Thryv, Inc. v. Click-To-Call Techs., LP*,
  590 U.S. 45 (2020) ............................................................................4, 5

*TikTok Inc. v. 10Tales, Inc.*,
  No. IPR2021-00476, Paper 15 (P.T.A.B. Dec. 5, 2022)........................27

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021) ............................................................................25

*United States v. Arthrex, Inc.*,
  594 U.S. 1 (2021) ...................................................................... 4, 5, 30

*United States v. Richardson*,
  418 U.S. 166 (1974) ............................................................................21

*University of S. Fla. Research Found., Inc. v. Fujifilm Med. Sys. U.S.A., Inc.*,
   19 F.4th 1315 (Fed. Cir. 2021) ................................................................14

*US Inventor Inc. v. Hirshfeld*,
   549 F. Supp. 3d 549 (E.D. Tex. 2021), *aff'd sub nom. US Inventor Inc. v. Vidal*,
   No. 21-40601, 2022 WL 4595001 (5th Cir. Sept. 30, 2022)...........................8, 9

*US Inventor Inc. v. Vidal*,
   No. 21-40601, 2022 WL 4595001 (5th Cir. Sept. 30, 2022).......................... 9, 39

*US Inventor, Inc. v. U.S. Patent & Trademark Office*,
   No. 23-5199, 2024 WL 1021257 (D.C. Cir. Jan. 23, 2024) ........................... 1, 12

*Uzuegbunam v. Preczewski*,
   141 S. Ct. 792 (2021) .............................................................................15

*Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*,
   454 U.S. 464 (1982) ..............................................................................24

*Whitmore v. Arkansas*,
   495 U.S. 149 (1990) .................................................................. 25, 31, 40

*WildEarth Guardians v. U.S. E.P.A.*,
   751 F.3d 649 (D.C. Cir. 2014) ..................................................................16

*WWHT, Inc. v. FCC*,
   656 F.2d 807 (D.C. Cir. 1981) ............................................................ 15-16, 16

**Statutes:**

28 U.S.C. § 1295(a)(1)...............................................................................1

28 U.S.C. § 1331 ......................................................................................1

28 U.S.C. § 1631 ................................................................................ 1, 12

35 U.S.C. § 1 *et seq.*...............................................................................2

35 U.S.C. § 3(a)(2)(A) ................................................................6

35 U.S.C. § 6 ...............................................................................4

35 U.S.C. § 131 ..........................................................................2

35 U.S.C. § 311 ..........................................................................2

35 U.S.C. § 314(a) ............................................................ 3, 4, 27

35 U.S.C. § 314(d) ..................................................................4, 8

35 U.S.C. § 315(b) ....................................................................10

35 U.S.C. § 315(e) ......................................................................5

35 U.S.C. § 316 ..........................................................................4

35 U.S.C. § 316(a) ......................................................................3

35 U.S.C. § 316(a)(11) ...............................................................5

35 U.S.C. § 316(c) ......................................................................4

35 U.S.C. § 318(a) ......................................................................5

35 U.S.C. § 319 ..........................................................................5

35 U.S.C. § 321 ..........................................................................2

35 U.S.C. § 324(a) ...................................................................3, 4

35 U.S.C. § 324(b) ......................................................................3

35 U.S.C. § 324(e) ..................................................................4, 8

35 U.S.C. § 325(e) ......................................................................5

35 U.S.C. § 326 ..........................................................................4

35 U.S.C. § 326(a) ...............................................................................3

35 U.S.C. § 326(a)(11) ........................................................................5

35 U.S.C. § 326(c) ...............................................................................4

35 U.S.C. § 328(a) ...............................................................................5

35 U.S.C. § 329 ....................................................................................5

**Regulations:**

37 C.F.R. § 42.4(a) ..............................................................................5

37 C.F.R. § 42.108(c) ..........................................................................3

37 C.F.R. § 42.208(c) ..........................................................................3

37 C.F.R. § 42.208(d) ..........................................................................3

**Legislative Materials:**

H.R. Rep. No. 112-98, pt. 1 (2011) .....................................................2

S. Rep. No. 79-752 (1945) .................................................................16

**Other Authorities:**

Changes Under Consideration to Discretionary Institution Practices, Petition Word-Count Limits, and Settlement Practices for America Invents Act Trial Proceedings Before the Patent Trial and Appeal Board, 88 Fed. Reg. 24,503 (Apr. 21, 2023) ...................................................7

Memorandum from Katherine K. Vidal, Director, USPTO, to Members of the Patent Trial & Appeal Bd. (June 21, 2022), https://perma.cc/ZSV5-ZPZS ..........7

Patent Trial and Appeal Board Rules of Practice for Briefing Discretionary Denial Issues, and Rules for 325(d) Considerations, Instituting Parallel and Serial Petitions, and Termination Due to Settlement Agreement,

   89 Fed. Reg. 28,693 (Apr. 19, 2024) ....................................................... 7-8, 8, 18

Patent Trial and Appeal Board, USPTO, *Standard Operating Procedure 2 (Revision 11)* (July 24, 2023), https://perma.cc/M4Y8-VSSN ............................................... 6

Request for Comments on Discretion to Institute Trials Before the Patent Trial and Appeal Board,

   85 Fed. Reg. 66,502 (Oct. 20, 2020) .............................................................. 7, 10

US Inventor, Comment Letter on Patent Trial and Appeal Board Rules of Practice for Briefing Discretionary Denial Issues, and Rules for 325(d) Considerations, Instituting Parallel and Serial Petitions, and Termination Due to Settlement Agreement (June 12, 2024), https://perma.cc/2D4S-8BA6 ................................ 19

## STATEMENT OF RELATED CASES

Plaintiffs filed a notice of appeal from the judgment in this case to the U.S. Court of Appeals for the D.C. Circuit.  Appx255.  On the government's motion, the D.C. Circuit entered a per curiam order (Judges Katsas, Rao, and Garcia) transferring the appeal to this Court pursuant to 28 U.S.C. § 1631.  *See US Inventor, Inc. v. U.S. Patent & Trademark Office*, No. 23-5199, 2024 WL 1021257, at *1 (D.C. Cir. Jan. 23, 2024) (per curiam).  No other appeal in or from the present civil action has previously been before this or any other appellate court. The government is not aware of any related cases within the meaning of Federal Circuit Rule 47.5(b).

## STATEMENT OF JURISDICTION

Plaintiffs invoked the jurisdiction of the district court pursuant to 28 U.S.C. § 1331.  Appx26.  Plaintiffs' Article III standing is contested.  *See infra* Part III.  The district court dismissed plaintiffs' complaint for lack of subject-matter jurisdiction on July 12, 2023.  Appx19.  On September 8, 2023, plaintiffs filed a notice of appeal to the U.S. Court of Appeals for the D.C. Circuit.  Appx255.  On the government's motion, the D.C. Circuit transferred the appeal to this Court pursuant to 28 U.S.C. § 1631.  *See US Inventor, Inc. v. U.S. Patent & Trademark Office*, No. 23-5199, 2024 WL 1021257, at *1 (D.C. Cir. Jan. 23, 2024) (per curiam).  This Court has jurisdiction over the appeal under 28 U.S.C. § 1295(a)(1).

## STATEMENT OF THE ISSUES

Plaintiffs seek judicial review of the denial by the United States Patent and Trademark Office (USPTO) of their petition for notice-and-comment rulemaking regarding the exercise of the USPTO Director's (Director) discretionary authority to deny petitions for inter partes review (IPR) and post-grant review (PGR).  The issues presented are:

1.      Whether plaintiffs' claims are moot because the USPTO has since undertaken notice-and-comment rulemaking regarding the exercise of the Director's discretionary denial authority.

2.      Whether plaintiffs lack standing to pursue their claims.

## STATEMENT OF THE CASE

### A.    Statutory and Regulatory Background

1.    The Patent Act of 1952 (Patent Act), 35 U.S.C. § 1 *et seq.*, charges the USPTO with examining applications for patents and directs the USPTO to issue a patent if the statutory criteria are satisfied. *Id.* § 131. Federal law has long permitted the USPTO to reconsider the patentability of inventions claimed in previously-issued patents. In the America Invents Act (AIA), Congress substantially expanded those procedures in an effort to "establish a more efficient and streamlined patent system." H.R. Rep. No. 112-98, pt. 1, at 39-40 (2011). Among other changes, the America Invents Act established inter partes review, which "allows a third party to ask the [USPTO] to reexamine the claims in an already-issued patent and to cancel any claim that the agency finds to be unpatentable in light of prior art." *Cuozzo Speed Techs., LLC v. Lee*, 579 U.S. 261, 265 (2016); *see* 35 U.S.C. § 311. The Act also established post-grant review, which permits cancellation on a broader set of grounds within nine months after a patent is granted. *See* 35 U.S.C. § 321.

When a petition for inter partes review or post-grant review is filed, the USPTO Director must determine whether or not to institute that type of proceeding. That determination has two parts. First, the America Invents Act establishes prerequisites that must be satisfied for the Director to grant review. *See*

35 U.S.C. §§ 314(a), 324(a).  With respect to inter partes review, "[t]he Director may not authorize an inter partes review to be instituted unless the Director determines that the information presented in the petition . . . shows that there is a reasonable likelihood that the petitioner would prevail with respect to at least [one] of the claims challenged in the petition."  *Id.* § 314(a).  With respect to post-grant review, the Director must "determine[] that the information presented in the petition . . . would demonstrate that it is more likely than not that at least [one] of the claims challenged in the petition is unpatentable."  *Id.* § 324(a).[1]  The America Invents Act further requires the Director to "prescribe regulations . . . setting forth the standards for the showing of sufficient grounds to institute a review."  *Id.* §§ 316(a), 326(a).  The USPTO promulgated regulations through notice-and-comment rulemaking setting forth such standards.  *See* 37 C.F.R. §§ 42.108(c), 42.208(c), (d).

Second, even when a petition meets the statute's minimum standards, the Director has discretion to decline to institute review.  The America Invents Act contains "no mandate to institute review."  *Cuozzo*, 579 U.S. at 273; *see also Mylan Labs. Ltd. v. Janssen Pharmaceutica, N.V.*, 989 F.3d 1375, 1382 (Fed. Cir. 2021) ("The Director is permitted, but never compelled, to institute an IPR."), *cert.*

---

[1] The Director may also institute post-grant review based on "a showing that the petition raises a novel or unsettled legal question that is important to other patents or patent applications."  35 U.S.C. § 324(b).

3

*denied*, 142 S. Ct. 874 (2022). Instead, "Congress has committed the [institution] decision . . . to the Director's unreviewable discretion." *United States v. Arthrex, Inc.*, 594 U.S. 1, 8-9 (2021); *see also* 35 U.S.C. §§ 314(a), 324(a). The America Invents Act contains no requirement that the USPTO prescribe regulations establishing circumstances under which the Director will exercise her discretion to deny institution. *See* 35 U.S.C. §§ 316, 326.

Neither part of the Director's determination is subject to judicial review. The America Invents Act declares that the Director's determination whether to institute review is "final and nonappealable." 35 U.S.C. §§ 314(d), 324(e). The Supreme Court has explained that this provision precludes efforts to review the Director's analysis of the statutory prerequisites for review. *See Thryv, Inc. v. Click-To-Call Techs., LP*, 590 U.S. 45, 52-60 (2020). And, as noted, the Supreme Court has also recognized that the Director's exercise of discretion regarding whether to institute inter partes review is not subject to judicial review. *See Arthrex*, 594 U.S. at 8-9.[2]

If the Director institutes inter partes review or post-grant review, the Patent Trial and Appeal Board (Board) conducts a trial on the patentability of the challenged claims. *See* 35 U.S.C. §§ 6, 316(c), 326(c). Generally, the Board must

---

[2] This Court has recognized the possibility of mandamus review for "colorable constitutional claims." *Mylan Labs.*, 989 F.3d at 1382.

issue a final written decision deciding the patentability of the challenged claims within one year after institution of the proceeding.  *See id.* §§ 316(a)(11), 326(a)(11); *Arthrex*, 594 U.S. at 9.

Unlike the threshold institution decision, final written decisions affect the substantive legal rights of the parties.  Such a decision can cancel patent claims as well as estop the petitioner from asserting in future litigation "that the claim is invalid on any ground that the petitioner raised or reasonably could have raised during" the review proceeding.  35 U.S.C. §§ 315(e), 318(a), 325(e), 328(a).  The America Invents Act authorizes dissatisfied parties to appeal the Board's final written decision on patentability to this Court.  *Id.* §§ 318(a), 319, 328(a), 329.  In such appeals, however, parties cannot contend "that the agency should have refused to institute inter partes review."  *Thryv*, 590 U.S. at 60.

2.    The Director has delegated to the Board her authority to decide whether to institute inter partes review or post-grant review proceedings.  *See* 37 C.F.R. § 42.4(a).  However, the Director retains ultimate authority over institution, and "any institution decision made by the Board as delegatee of the Director is subject to reversal by the Director."  *Apple Inc. v. Vidal*, 63 F.4th 1, 7 (Fed. Cir. 2023), *cert. denied sub nom. Intel Corp. v. Vidal*, 144 S. Ct. 548 (2024).

The Director also exercises control over institution decisions through additional means.  The Director is "responsible for providing policy direction and

management supervision" for the USPTO, 35 U.S.C. § 3(a)(2)(A), and does so in various ways, including by publishing guidance materials and issuing memoranda regarding recurring issues before the Board. The Director may also designate particular Board opinions as precedential, thus making those opinions "binding Board authority in subsequent matters involving similar facts or issues." Patent Trial and Appeal Board, USPTO, *Standard Operating Procedure 2 (Revision 11)*, at 7 (July 24, 2023), https://perma.cc/M4Y8-VSSN.

The Director has designated as precedential several Board decisions that identify factors to consider when exercising her discretion to deny institution of inter partes review or post-grant review. These decisions identify non-exclusive factors for the Board to consider when a petition presents one of several recurring circumstances: when the Board has already denied a petition challenging the same claims of the same patent;[3] when a petition presents prior "art or arguments [that] are 'the same or substantially the same' as art or arguments previously presented to the" Board;[4] and when a parallel district court case involving the same patent is already in progress.[5]

---

[3] *See General Plastic Indus. Co. v. Canon Kabushiki Kaisha*, No. IPR2016-01357, Paper 19, at 15-16 (P.T.A.B. Sept. 6, 2017) (precedential in relevant part).

[4] *See Advanced Bionics, LLC v. MED-EL Elektromedizinische Geräte GmbH*, No. IPR2019-01469, Paper 6, at 7 (P.T.A.B. Feb. 13, 2020) (precedential).

[5] *See Apple Inc. v. Fintiv, Inc.*, No. IPR2020-00019, 2020 WL 2126495, at *2 (P.T.A.B. Mar. 20, 2020) (precedential); *NHK Spring Co. v. Intri-Plex Techs., Inc.*, No. IPR2018-00752, Paper 8, at 20 (P.T.A.B. Sept. 12, 2018) (precedential).

The Director has also issued updated interim guidance to the Board regarding the exercise of her discretionary denial authority. *See* Memorandum from Katherine K. Vidal, Director, USPTO, to Members of the Patent Trial & Appeal Bd. (June 21, 2022), https://perma.cc/ZSV5-ZPZS.

Finally, the Director is considering comments on a proposed rule that would establish criteria for the exercise of her discretionary denial authority. The USPTO began this process in 2020, when the agency issued a request for comment (RFC) regarding the exercise of the Director's discretionary denial authority. *See* Request for Comments on Discretion to Institute Trials Before the Patent Trial and Appeal Board, 85 Fed. Reg. 66,502 (Oct. 20, 2020). The USPTO later issued an advance notice of proposed rulemaking (ANPRM) identifying, among other topics, possible future changes regarding the exercise of the Director's discretionary denial authority. *See* Changes Under Consideration to Discretionary Institution Practices, Petition Word-Count Limits, and Settlement Practices for America Invents Act Trial Proceedings Before the Patent Trial and Appeal Board, 88 Fed. Reg. 24,503 (Apr. 21, 2023). The USPTO has further issued a notice of proposed rulemaking (NPRM) regarding some of the changes discussed in the ANPRM. *See* Patent Trial and Appeal Board Rules of Practice for Briefing Discretionary Denial Issues, and Rules for 325(d) Considerations, Instituting Parallel and Serial Petitions, and Termination Due to Settlement Agreement, 89 Fed. Reg. 28,693, 28,695 (Apr. 19,

2024). The USPTO is considering issuing additional proposed rules regarding topics raised in the ANPRM. *See id.*

Just as 35 U.S.C. §§ 314(d) and 324(e) preclude review of institution decisions themselves, this Court has held that these provisions also prohibit judicial review of the substance of the Director's instructions and guidance to the Board regarding the exercise of her institution authority. "For the IPR system to function with the delegations that are inevitable and congressionally expected," judicial review cannot extend to "the instructions given by the Director to the Board as delegatee" to exercise her institution authority. *Apple*, 63 F.4th at 13.

## B.    Prior Proceedings

1.    Plaintiff US Inventor, Inc. (US Inventor)—a nonprofit corporation with members who include patent owners, Appx27—filed a previous suit in the Eastern District of Texas to challenge the Director's efforts to provide guidance regarding the exercise of her discretionary denial authority. *See US Inventor Inc. v. Hirshfeld*, 549 F. Supp. 3d 549, 554 (E.D. Tex. 2021), *aff'd sub nom. US Inventor Inc. v. Vidal*, No. 21-40601, 2022 WL 4595001 (5th Cir. Sept. 30, 2022) (per curiam). US Inventor sought, among other relief, to compel notice-and-comment rulemaking addressing the Director's exercise of her discretionary denial authority. *See id.* The district court dismissed US Inventor's suit for lack of standing, and

that decision was affirmed on appeal.  *See id.* at 559; *US Inventor*, 2022 WL 4595001, at *1.[6]

While that litigation was ongoing, US Inventor and a subdivision of plaintiff National Small Business United filed a petition seeking to have the agency undertake notice-and-comment rulemaking to establish standards governing the exercise of the Director's discretionary denial authority.  *See* Appx28, Appx29. The petition contended that, under the America Invents Act, the USPTO Director is "required to promulgate regulations that govern how such discretion should be exercised," and that "the approach most consistent with the statute and relevant decisional law is for the Director to implement the institution discretion through notice-and-comment rulemaking providing objective criteria for institution." Appx51.  The petition included a proposed rule that would, among other provisions, require the Director to allow the patent owner to veto institution in various circumstances.  *See* Appx60-62.  For example, the patent owner would be able to veto institution if the petitioner or a privy is involved in pending district court litigation concerning any of the challenged claims; if the petitioner or a privy has filed another petition concerning the same claims; or if the patent owner is the

---

[6] The Fifth Circuit held that no Article III case or controversy existed without ruling on the merits of the government's motion to dismiss or transfer the appeal on the ground that this Court had exclusive jurisdiction.  *See US Inventor*, 2022 WL 4595001, at *2.

original patentee, claims small or micro entity status, and has reduced any of the claims to practice. *See* Appx60-62. The petition also proposed a definition of the term "privy." *See* Appx60; *see, e.g.*, 35 U.S.C. § 315(b).

The USPTO denied the petition. The agency explained that the proposed definition of "privy" differed from the common-law definition the agency applies in interpreting the America Invents Act. Appx71. The USPTO also explained that "[t]he issues raised in the Petition overlap those raised in" an RFC issued by the USPTO and that the agency was "currently reviewing the extensive stakeholder commentary that it received in response." Appx72; *see* 85 Fed. Reg. 66,502. The agency noted, however, "that suggestions provided in the Petition will be considered as part of any future rulemaking on AIA trials." Appx72*.*

2.    Plaintiffs brought this suit in the District of Columbia district court to challenge the USPTO's denial of their petition for rulemaking. *See* Appx29, Appx46. Plaintiffs seek a declaration that denial of the petition was unlawful because the America Invents Act requires the Director to issue notice-and-comment regulations identifying circumstances where Congress has authorized inter partes review or post-grant review, but where the Director will nonetheless exercise her unreviewable discretion to decline to institute such proceedings. *See* Appx46. Plaintiffs also seek a declaration that denial of the petition was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."

10

Appx46.  Finally, plaintiffs seek to vacate the denial and compel the USPTO to "act to conclude the matter presented to it [in] the Petition in compliance with law."  Appx46.

The district court dismissed the suit, holding that plaintiffs lack standing for their claims.  Appx2.  With regard to associational standing, the court reasoned that "plaintiffs' theory of injury is too speculative to describe a concrete injury from defendants' denial of their petition."  Appx17.  "Plaintiffs rely on a 'specific, uncertain series of events' based on 'conjecture about how independent third parties, i.e. the [Board] and a district court, would act.'"  Appx17.  Specifically, for denial of the petition to cause the cancellation of plaintiffs' patent claims, the following events would have to occur: (1) a third party would have to petition for inter partes review or post-grant review of a patent belonging to one of plaintiffs' members; (2) the petition would have to satisfy the statutory prerequisites for institution; (3) the Board would have to decline to exercise the Director's discretionary denial authority in a case where it would have done the opposite after notice-and-comment rulemaking; and (4) the inter partes review or post-grant review proceeding would have to create a substantially higher probability of cancellation than other means of adjudication, such as district court litigation. Appx11-12.  The court explained that plaintiffs' theory was much like that in *Clapper v. Amnesty International USA*, 568 U.S. 398 (2013), "where the Supreme

11

Court rejected a theory of standing based on a 'highly attenuated chain of possibilities' as to agency, court, and third-party action." Appx17 (quoting *Clapper*, 568 U.S. at 410).

The court also held that plaintiffs lack organizational standing. *See* Appx9-10. The court noted the "lack of opposition by plaintiffs" and that "plaintiffs do not focus argument in their opposition on either organization's standing in its own right." Appx9.

3.     Plaintiffs appealed to the U.S. Court of Appeals for the D.C. Circuit. Appx255.  On the government's motion, the D.C. Circuit transferred the appeal to this Court pursuant to 28 U.S.C. § 1631.  *See US Inventor, Inc. v. USPTO*, No. 23-5199, 2024 WL 1021257, at *1 (D.C. Cir. Jan. 23, 2024) (per curiam).

## SUMMARY OF ARGUMENT

1.     Plaintiffs' claims are moot.  This suit challenges the USPTO's denial of a petition requesting that the USPTO engage in notice-and-comment rulemaking to establish standards governing the exercise of the Director's discretionary denial authority.  The USPTO has since proposed a rule regarding the Director's exercise of her discretionary denial authority, addressing several topics from plaintiffs' petition.  While the USPTO's proposed rule does not incorporate the specific provisions proposed in plaintiffs' petition, plaintiffs concede that, even if the petition is granted, the agency would not be required to adopt their specific

12

proposals in a proposed rule.  Because plaintiffs recognize that the agency is free to propose a rule of the agency's own making, plaintiffs would not be entitled to any further relief even if they prevail on their claims.  Accordingly, those claims are moot.

2.     The district court correctly held that plaintiffs lack standing.  Supreme Court precedent holds that, to establish associational standing, an organizational plaintiff must identify specific members that satisfy Article III standing requirements.  Moreover, because plaintiffs seek prospective relief, they cannot rely on past injury to such a member, but must instead establish a substantial risk of future injury.  Plaintiffs' brief identifies only one member, 10Tales, whose patent was challenged in an inter partes review.  But the Director did not institute review of 10Tales's patent, which *decreases* the likelihood that 10Tales patent would be reviewed in a future inter partes review.  Moreover, that denial of institution was based on statutory grounds entirely separate from the Director's discretionary-denial authority.  Any prospect of cancellation of 10Tales's patent claims is far too remote to establish standing.

More generally, any injury in the form of possible future cancellation of one of plaintiffs' members' patent claims is too speculative to establish standing.  For such an injury to be fairly traceable to the agency action at issue, a lengthy chain of events would have to occur involving decisions by third-party petitioners, the

government, and the courts.  Specifically, (1) a third party would have to petition for inter partes review or post-grant review of a patent belonging to one of plaintiffs' members; (2) the petition would have to satisfy the statutory prerequisites for institution; (3) the Board would have to decline to exercise the Director's discretionary denial authority in a case where it would have done the opposite after notice-and-comment rulemaking; (4) the inter partes review or post-grant review proceeding would have to create a substantially higher probability of cancellation than other means of adjudication, such as district court litigation; and (5) any cancellation would have to survive judicial review by this Court.  Theories of standing that depend on third-party decisions are strongly disfavored, and plaintiffs' attenuated chain does not come close to sufficing here.

## ARGUMENT

## I.    STANDARD OF REVIEW

The Court "appl[ies] regional circuit law to [its] review of a dismissal of a complaint for lack of standing unless the issue is unique to patent law and therefore exclusively assigned to the Federal Circuit."  *University of S. Fla. Research Found., Inc. v. Fujifilm Med. Sys. U.S.A., Inc.*, 19 F.4th 1315, 1323 (Fed. Cir. 2021).  The D.C. Circuit and this Court review dismissals for lack of standing de novo.  *See Hardaway v. District of Columbia Hous. Auth.*, 843 F.3d 973, 977 (D.C. Cir. 2016); *see also Sicom Sys., Ltd. v. Agilent Techs., Inc.*, 427 F.3d 971, 975 (Fed.

Cir. 2005).  This Court has an obligation to consider questions of its own

jurisdiction, including mootness.  *See Merritt v. Wilkie*, 965 F.3d 1357, 1360 (Fed.

Cir. 2020); *Mine Reclamation Corp. v. FERC*, 30 F.3d 1519, 1522 (D.C. Cir. 1994).

## II.   PLAINTIFFS' CLAIMS ARE MOOT

"A case becomes moot—and therefore no longer a 'Case' or 'Controversy'

for purposes of Article III—'when the issues presented are no longer "live" or the

parties lack a legally cognizable interest in the outcome.'"  *Already, LLC v. Nike,*

*Inc.*, 568 U.S. 85, 91 (2013).  Mootness occurs "if in the course of litigation a court

finds that it can no longer provide a plaintiff with any effectual relief."

*Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 796 (2021).  Plaintiffs' claims are moot

here because the USPTO has already embarked on notice-and-comment

rulemaking to consider proposed regulations that would establish criteria for the

exercise of the Director's discretionary authority to decline to review the validity

of claims in issued patents.  This is the most relief to which plaintiffs claim

entitlement.  *Cf. In re International Union, United Mine Workers of Am.*, 231 F.3d

51, 54 (D.C. Cir. 2000) ("An agency's notice of proposed rulemaking necessarily

moots a petitioner's claim of unreasonable delay if that claim is based upon . . . a

matter that the agency proposes to regulate in that rulemaking.").

The Administrative Procedure Act does not "compel an agency to undertake

rulemaking merely because a petition has been filed."  *WWHT, Inc. v. FCC*, 656

F.2d 807, 813 (D.C. Cir. 1981). Rather, "[t]he agency may either grant the petition, undertake public rule making proceedings[,] . . . or deny the petition." *Id.* (third alteration in original) (quoting S. Rep. No. 79-752, at 15 (1945)). Judicial review of the denial of a rulemaking petition is "'extremely limited' and 'highly deferential.'" *WildEarth Guardians v. U.S. E.P.A.*, 751 F.3d 649, 651 (D.C. Cir. 2014) (quoting *Massachusetts v. EPA*, 549 U.S. 497, 527-28 (2007)). Compelling the agency to conduct rulemaking is "appropriate 'only in the rarest and most compelling of circumstances.'" *American Horse Prot. Ass'n v. Lyng*, 812 F.2d 1, 7 (D.C. Cir. 1987) (quoting *WWHT*, 656 F.2d at 818). Indeed, plaintiffs' complaint does not ask for compelled rulemaking, but rather for an order directing the USPTO to "promptly act to conclude the matter presented to it [in] the Petition in compliance with law." Appx46. Thus, even if plaintiffs prevailed, they could not obtain a court order directing the USPTO to propose plaintiffs' proposed regulation.

Here, plaintiffs challenge the USPTO's denial of their petition "for rulemaking that would provide specific criteria for deciding institution of trials under the America Invents Act." Appx49. The petition explained that "[t]o date the [US]PTO has relied on two mechanisms to govern the use of discretion in the institution decision": "[t]he Trial Practice Guide and designation of certain decisions as precedential." Appx52. Plaintiffs contended that "[t]he primary

16

failing of this approach, and the reason for this petition, is that it does not provide for reliable and predictable patent rights." Appx52.  Plaintiffs instead argued that "the approach most consistent with the statute and relevant decisional law is for the Director to implement the institution discretion through notice-and-comment rulemaking providing objective criteria for institution."  Appx51.

Although plaintiffs' petition included specific proposed regulatory language, Appx60-62, plaintiffs' complaint contends, and their brief reiterates, that "[a]n agency grant of the Petition would not have required the agency to promulgate the suggested text Plaintiffs proposed as a potential proposed rule," Appx30; *see* Appellants' Br. 9.  Instead, plaintiffs contend that "Defendants had discretion to grant the Petition" and "publish in the Federal Register proposed rule text of its own making."  Appx30; *see also* Appellants' Br. 9.

The USPTO has started the very process that plaintiffs assert is required. After plaintiffs filed suit in this case, the USPTO issued an ANPRM and then an NPRM seeking public comment on proposed regulations that would govern the exercise of the Director's discretionary denial authority.  Consistent with the USPTO's response to plaintiffs' petition, which stated that "suggestions provided in the Petition will be considered as part of any future rulemaking on AIA trials," Appx72, the NPRM specifically noted that "[t]his rulemaking is consistent with comments received from stakeholders in response to the RFC and the ANPRM, *as*

*well as those received in other contexts*, expressing a preference that key policy changes be made and formalized through rulemaking," 89 Fed. Reg. at 28,695 (emphasis added).

The NPRM did not use the regulatory language proposed in plaintiffs' petition but addressed several of the same issues.  For example, plaintiffs proposed language governing institution when "any of the challenged claims are also challenged in another petition by the petitioner, the petitioner's real party-in-interest, or a privy of the petitioner."  Appx61.  The NPRM likewise addresses what it defines as a "serial petition," a petition that "[c]hallenges same or overlapping claims of the same patent that have already been challenged by the petitioner, the petitioner's real party in interest, or a privy of the petitioner."  89 Fed. Reg. at 28,703.  Plaintiffs also proposed language addressing when "the same or substantially the same prior art or arguments previously were presented to the Office, unless the petitioner has demonstrated that the Office clearly erred in a manner material to the patentability of the challenged claims."  Appx60-61.  The NPRM likewise addresses cases in which "the same or substantially the same prior art was previously meaningfully addressed by the Office or the same or substantially the same arguments were previously meaningfully addressed by the Office with regard to the challenged patent or a related patent or application, unless the petitioner establishes material error by the Office."  89 Fed. Reg. 28,705.

The NPRM proposed an approach different from the one plaintiffs prefer. For example, the NPRM does not include any provision permitting a patent owner to veto institution. *See* Appx61. But plaintiffs cite no authority for the proposition that the USPTO could be required to take comments on plaintiffs' proposed regulations. And, to the extent that plaintiffs disagreed with the content of the specific proposals that the USPTO has made in the NPRM, they were free to offer comments and to participate in the rulemaking process to advocate for their preferred approach. Indeed, US Inventor has already submitted comments on the USPTO's proposed rule. *See* US Inventor, Comment Letter on Patent Trial and Appeal Board Rules of Practice for Briefing Discretionary Denial Issues, and Rules for 325(d) Considerations, Instituting Parallel and Serial Petitions, and Termination Due to Settlement Agreement (June 12, 2024), https://perma.cc/2D4S-8BA6. Nothing forecloses the USPTO from considering US Inventor's proposals in the context of the current rulemaking or in the future.

At bottom, plaintiffs themselves acknowledge that the USPTO did not need to follow the proposals in plaintiffs' petition, but rather could propose rules of its own making. The USPTO did precisely that. Plaintiffs are entitled to no more even if they prevail, making their claims moot.

## III.  PLAINTIFFS LACK STANDING TO CHALLENGE THE DENIAL OF THEIR PETITION FOR RULEMAKING

The district court correctly held that plaintiffs lack standing to pursue their claims.  Plaintiffs have not established a concrete injury in fact that is fairly traceable to the USPTO's actions or likely to be redressed by vacating the denial of their petition for rulemaking.  Plaintiffs accordingly lack standing to invoke the power of judicial review in this case.

### A.  Plaintiffs Bear the Burden of Establishing Injury in Fact, Causation, and Redressability

"In limiting the judicial power to 'Cases' and 'Controversies,' Article III of the Constitution restricts it to the traditional role of Anglo-American courts, which is to redress or prevent actual or imminently threatened injury to persons caused by private or official violation of law."  *Summers v. Earth Island Inst.*, 555 U.S. 488, 492 (2009).  The standing requirement, which "reflect[s] this fundamental limitation," "assures that" jurisdiction is limited to circumstances in which "'there is a real need to exercise the power of judicial review in order to protect the interests of the complaining party.'"  *Id.* at 493 (quoting *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 221 (1974)).  "Where that need does not exist, allowing courts to oversee legislative or executive action 'would significantly alter the allocation of power . . . away from a democratic form of

government[.]'" *Id.* (first alteration in original) (quoting *United States v. Richardson*, 418 U.S. 166, 188 (1974) (Powell, J., concurring)).

"[T]he irreducible constitutional minimum of standing contains three elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  First, the plaintiff must establish "an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized; and (b) 'actual or imminent, not "conjectural" or "hypothetical."'" *Id.* (footnote and citations omitted).  Where the plaintiff seeks injunctive relief, the plaintiff cannot rely on "past injury," but must establish "imminent future injury that is sought to be enjoined." *Summers*, 555 U.S. at 495.  Second, the plaintiff must establish "a causal connection between the injury and the conduct complained of—the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant.'" *Lujan*, 504 U.S. at 560 (alterations in original).  Third, the plaintiff must establish that it is "'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Id.* at 561.  When a plaintiff asserts an entitlement to rulemaking, the redressability requirement is somewhat "relaxed." *Apple Inc. v. Vidal*, 63 F.4th 1, 16 (Fed. Cir. 2023) (citing *Massachusetts*, 549 U.S. at 518), *cert. denied sub nom. Intel Corp. v. Vidal*, 144 S. Ct. 548 (2024).  But the plaintiff still must show a "genuine possibility" that the process of notice-and-comment rulemaking would lead to a

change in agency policy favorable to the plaintiff and that would alleviate the plaintiff's asserted injury. *Id.* at 17.

The plaintiff "bears the burden of showing that he has standing for each type of relief sought." *Summers*, 555 U.S. at 493. "Where, as here, a case is at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (alteration in original). Even at the pleading stage, courts "do not assume the truth of legal conclusions, nor do [they] accept inferences that are unsupported by the facts set out in the complaint." *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015) (quoting *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015)). Thus, "'[w]hen considering any chain of allegations for standing purposes, [courts] may reject as overly speculative those links which are predictions of future events (especially future actions to be taken by third parties).'" *Id.* (first alteration in original) (quoting *Arpaio*, 797 F.3d at 21).

## B.    Plaintiffs Cannot Identify an Injury in Fact Caused by the Challenged Agency Action or Which Is Likely to Be Redressed by a Grant of the Petition

In this case, plaintiffs' principal alleged injury is "an increased risk of patent cancellation" due to their members' participation in inter partes review or post-grant review proceedings. *See* Appellants' Br. 19. That purported injury is not "an invasion of a legally protected interest which is (a) concrete and particularized; and

(b) 'actual or imminent, not "conjectural" or "hypothetical."'" *Lujan*, 504 U.S. at 560 (footnote and citations omitted).  Nor is it "'fairly . . . trace[able] to the challenged action of the defendant'" or likely to be redressed by a favorable decision.  *Id.* (alterations in original).

1.    Plaintiffs cannot establish standing based on an asserted probability that some unidentified member will suffer harm.  Plaintiff organizations no longer assert—and have therefore forfeited—any claim of standing in their own right, based on injury to their own organizational interests.  Instead, they assert associational standing based on alleged injury to their members, which requires that "(a) [the organization's] members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977).

To establish associational standing, plaintiff organizations must identify specific members that are facing imminent harm.  Plaintiffs cannot rely on the mere prospect of harm to unnamed members, or even a statistical likelihood that someone in their membership will be injured.  The Supreme Court has rejected the argument that standing could be demonstrated by a "statistical probability that some of [an organization's] members are threatened with concrete injury."

23

*Summers*, 555 U.S. at 497-98.  The Court instead required that the "plaintiff-organizations . . . make specific allegations establishing that at least one *identified* member had suffered or would suffer harm." *Id.* (emphasis added).  "The law of averages is not a substitute for standing." *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 489 (1982).  "[I]t therefore does [plaintiffs] no good to string together 130,000 remote and speculative claims rather than one remote and speculative claim" because "[e]ach claim is still remote and speculative, which . . . is an impermissible basis for our exercising the judicial power." *Public Citizen, Inc. v. National Highway Traffic Safety Admin.*, 489 F.3d 1279, 1294 (D.C. Cir. 2007).

Moreover, because plaintiffs seek prospective relief, they must identify members that face a substantial likelihood of future injury and cannot rely on past injury. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983) (holding that party who had allegedly been subject to an unlawful practice in the past lacked standing to seek injunctive relief unless he could show "a real and immediate threat" that he would be subject to the practice again in the future).

2.    Plaintiffs also cannot rely on an "increased risk" to establish an injury in fact.  Although cancellation of a specific patent claim can plainly constitute an injury for standing purposes, plaintiffs err in asserting that a mere increase in the risk of cancellation, standing alone, constitutes a separately cognizable injury.

As the Supreme Court has explained "many times before," mere "[a]llegations of possible future injury do not satisfy the requirements of Art[icle] III." *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990). "[A] person exposed to a risk of future harm may pursue forward-looking, injunctive relief to prevent the harm from occurring" only if "the risk of harm is sufficiently imminent and substantial." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 435 (2021).

Here, the claimed injury is particularly attenuated. Plaintiffs allege that in failing to conduct notice-and-comment rulemaking, the USPTO *failed to reduce the risk* of cancellation of plaintiffs' members' patent claims. The bar for asserting an injury of this type is high. "Much government regulation slightly increases a citizen's risk of injury—or insufficiently decreases the risk compared to what some citizens might prefer." *Public Citizen*, 489 F.3d at 1295. "Opening the courthouse to these kinds of increased-risk claims would drain the 'actual or imminent' requirement of meaning . . . ." *Id.*

"[T]he proper way to analyze an increased-risk-of-harm claim is to consider the ultimate alleged harm"—for example, "death, physical injury, or property damage"—"as the concrete and particularized injury and then to determine whether the increased risk of such harm makes injury to an individual citizen sufficiently 'imminent' for standing purposes." *Food & Water Watch, Inc.*, 808 F.3d at 915 (quoting *Public Citizen*, 489 F.3d at 1298). Thus, for example,

plaintiffs challenging a new government procedure for inspecting chickens "must demonstrate" (1) that the new procedure "substantially increases the risk of contracting foodborne illness compared to the existing inspection methods, and (2) a substantial probability that" the plaintiffs "will contract a foodborne illness given that increase of risk." *Id.*

3. Plaintiffs cannot identify an injury-in-fact that is fairly traceable to agency action at issue. They allege (at 29) that "small business patent owner members of Appellants are injured by the status quo, *i.e.*, the tendency of the [Board] to allow AIA trials, resulting more often than not in the cancellation of patent claims." But as explained, Supreme Court precedent requires plaintiffs to identify specific members that will suffer injury and precludes them from relying on a purported likelihood that some unidentified member will do so.

The only member plaintiffs discuss (at 33) is 10Tales, a member of US Inventor, but plaintiffs offer no reason why 10Tales faces a substantial risk of cancellation, let alone one fairly traceable to the absence of notice-and-comment rulemaking. According to plaintiffs' complaint, another company petitioned for inter partes review of a patent owned by 10Tales, but the USPTO denied the petition. Appx93-94. The Board found that the petition did not satisfy the America Invents Act's *statutory* requirements for institution of inter partes review, *see* Appx94—that is, that the petition did not "show[] that there is a reasonable

likelihood that the petitioner would prevail with respect to at least [one] of the claims challenged in the petition," 35 U.S.C. § 314(a).  The allegations of the complaint thus show that 10Tales is particularly *unlikely* to have any of its patent claims invalidated in an inter partes review, in that the agency has already refused institution once before "on the merits of patentability."  Appx94.

In the 10Tales matter, the Board also had no occasion to consider whether to exercise the Director's discretionary denial authority—the subject of the rulemaking proceedings plaintiffs seek here—let alone whether any claims should be cancelled based on the evidence and arguments that would be presented during the trial phase of an inter partes review proceeding.  Thus, at the time plaintiffs filed their complaint, the prospect that 10Tales would suffer cancellation of any patent claims because of the absence of notice-and-comment rulemaking was highly speculative.

Plaintiffs nonetheless contend (at 33) that 10Tales faced some continuing risk because the petitioner sought reconsideration of the denial.  But this allegation rests on speculative assumption layered upon speculative assumption.  To establish standing on this basis, plaintiffs must show a reasonable likelihood that: (1) the Board would reverse its merits-based denial;[7] (2) the Board would choose to

---

[7] In fact, the Board ultimately denied reconsideration and upheld the denial of institution.  *See TikTok Inc. v. 10Tales, Inc.*, No. IPR2021-00476, Paper 15, at 1 (P.T.A.B. Dec. 5, 2022).

institute review rather than deny institution on discretionary grounds; (3) notice-and-comment rulemaking would have resulted in the adoption of a rule that would have led to a discretionary denial; and (4) the instituted proceeding would result in cancellation of 10Tales' patent claims.  These speculations fall far short of established standing requirements.

4.    Plaintiffs' brief identifies no other members whom plaintiffs even attempt to assert have standing, therefore forfeiting any such arguments.  In any case, plaintiffs would face a steep burden in establishing standing based on the possibility of its members "facing new AIA challenges."  Appellants' Br. 12.  As the district court found, the following sequence of events would have to occur for one of plaintiffs' members to suffer an injury fairly traceable to the absence of notice-and-comment rulemaking:

> (1) a third party will file an IPR or PGR petition for review of a specific patent held by a member of each of their organizations; (2) the IPR or PGR petition would satisfy the minimum standards for institution of such a proceeding; (3) the Board would not exercise the Director's discretionary authority to decline institution under the current guidance, but would do so under a new regulation that the USPTO would adopt if it had granted Plaintiffs' Rulemaking Petition; and (4) the institution of IPR or PGR proceedings creates a substantially higher probability of improper cancellation of the patent than adjudication of the same claims through other proceedings, such as district court litigation.

Appx11-12 (quoting Appx132).  Moreover, as noted above, any cancellation would have to survive judicial review by this Court.  Each of these steps is highly

uncertain, and together the chain is far too speculative to establish injury and causation.

At step one, the filing of an inter partes review or post-grant review petition—"which is required to set off this chain of injury—is entirely within the control and discretion of a third party." Appx12. Courts "are particularly disinclined 'to endorse standing theories that rest on speculation about the decisions of independent actors.'" *Cierco v. Mnuchin*, 857 F.3d 407, 418 (D.C. Cir. 2017) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 (2013)); *see also Food & Drug Admin. v. Alliance for Hippocratic Med.*, No. 23-235, 2024 WL 2964140, at *7 (U.S. June 13, 2024). This Court has likewise held that no injury in fact exists when the "evidence of injury essentially amounts to the existence of a nonzero risk of future litigation." *ABS Glob., Inc. v. Cytonome/ST, LLC*, 984 F.3d 1017, 1025 (Fed. Cir. 2021). Without more, plaintiffs' speculation is inadequate to establish that any particular member is likely to face an inter partes review or post-grant review petition.

Even assuming the filing of a petition for inter partes review or post-grant review, "there are numerous reasons unrelated to the proposed rule changes in plaintiffs' petition [for rulemaking] why the [Board] would decline to institute AIA proceedings following the submission of a petition by a third party." Appx13. Thus, at the second step, the Board may deny the petition for failure to meet

statutory criteria, as it did with 10Tales.  In that case, the denial of the petition for rulemaking cannot be said to cause plaintiffs' injury.

At the third step, there are two speculative contingencies.  First, there is the possibility that the Board may deny the petition on discretionary grounds under existing guidance regarding the Director's discretionary denial authority.  If the Board would deny institution even under existing guidance, the absence of notice-and-comment rulemaking again cannot be the cause of plaintiffs' claimed injury.  Second, there must be a genuine possibility that notice-and-comment rulemaking would yield a rule that would lead to the discretionary denial of the petition.  Plaintiffs again offer nothing but speculation to establish that notice-and-comment rulemaking would make the difference as to institution for any member.  More generally, the Supreme Court has rejected standing where establishing injury requires speculation about how a government decisionmaker like the USPTO will exercise discretionary authority.  *Clapper*, 568 U.S. at 412 ("[The] respondents can only speculate as to how the Attorney General and the Director of National Intelligence will exercise their discretion in determining which communications to target.").  That principle applies with equal force here, where "Congress has committed the decision to institute inter partes review to the Director's unreviewable discretion."  *United States v. Arthrex, Inc.*, 594 U.S. 1, 8-9 (2021).

At step four, plaintiffs' allegation that they will fare worse in inter partes review and post-grant review proceedings as opposed to other procedures, such as a district court infringement suit or a declaratory judgment action, is also speculative. "Allegations of injury based on predictions regarding future legal proceedings are . . . 'too speculative to invoke the jurisdiction of an Art[icle] III Court.'" *Platte River Whooping Crane Critical Habitat Maint. Tr. v. FERC*, 962 F.2d 27, 35 (D.C. Cir. 1992) (second alteration in original) (quoting *Whitmore*, 495 U.S. at 157). The Supreme Court has likewise warned that "[i]t is just not possible for a litigant to prove in advance that the judicial system will lead to any particular result in his case." *Clapper*, 568 U.S. at 413-14 (alteration in original) (quoting *Whitmore*, 495 U.S. at 159-60). The Court has accordingly "decline[d] to abandon [its] usual reluctance to endorse standing theories that rest on speculation about the decisions of independent actors" like the courts. *Id.* at 414.

Finally, a Board judgment finding one or more claims not patentable would be subject to judicial review in this Court, as would district court litigation regarding the same claims. Plaintiffs' theory of standing accordingly requires that, to the extent the probability of cancellation differs between the two types of proceedings, that a "substantial[]" difference in probability persist even after review by this Court. *Food & Water Watch, Inc.*, 808 F.3d at 917-18. As noted,

however, predictions regarding the outcome of legal proceedings are too speculative to satisfy the requirements of Article III.

The likelihood that all these events will occur with respect to any specific, identified member of either plaintiff is simply too remote and speculative to establish standing. As noted, "'[w]hen considering any chain of allegations for standing purposes, [courts] may reject as overly speculative those links which are predictions of future events (especially future actions to be taken by third parties).'" *Food & Water Watch, Inc.*, 808 F.3d at 913 (first alteration in original) (quoting *Arpaio*, 797 F.3d at 21). Plaintiffs' allegations accordingly do not satisfy the requirements of Article III.

5.    This Court's decision in *Apple* further reinforces that plaintiffs lack standing. *Apple* held that, although two claims in that case were judicially unreviewable, one specific plaintiff—Apple—had standing to pursue a claim that certain factors evaluated by the Board in considering discretionary denial based on pending infringement litigation were invalid because they were not promulgated using notice-and-comment rulemaking. 63 F.4th at 15; *see id.* at 8-9. Those factors are known as the *Fintiv* factors. *See Apple Inc. v. Fintiv, Inc.*, No. IPR2020-00019, 2020 WL 2126495 (P.T.A.B. Mar. 20, 2020) (precedential).

The Court first held that the plaintiffs could not "aggregat[e] the plaintiffs' asserted threatened harms" to establish standing. *Apple*, 63 F.4th at 15. The Court quoted the Supreme Court's explanation that "[t]he doctrine of standing to sue is not a kind of gaming device that can be surmounted merely by aggregating the allegations of different kinds of plaintiffs, each of whom may have claims that are remote or speculative taken by themselves." *Id.* (quoting *ASARCO Inc. v. Kadish*, 490 U.S. 605, 615 (1989)). That holding reinforces that plaintiffs in this case cannot rely on a purported probability that some unidentified member will suffer injury but, rather, must identify specific members that have standing.

The Court further relied on "judicial notice that Apple is a repeat player, in the relevant respect, on a very large scale." *Apple*, 63 F.4th at 16. "On a regular basis, for many years, [Apple] has been sued for infringement . . . and then petitioned for an IPR of patent claims at issue in that suit," and "[s]ome of the petitions have been denied . . . based on the" *Fintiv* factors. *Id.* at 16-17.

Because of the frequency with which Apple filed petitions to institute inter partes review after infringement litigation, the Court concluded that "'there is a substantial risk that . . . harm will occur'" to Apple "in the future because of the" *Fintiv* factors. *Apple*, 63 F.4th at 17 (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)). The Court relied on the fact that, because the *Fintiv* factors address discretionary denial when pending infringement litigation exists

regarding the same claims, the Board would have occasion to apply them only if an infringement suit already existed. *Id.* The Court held that Apple faced injury to a "concrete and legally protected" interest "because of the infringement suit" necessarily present when the Board applies the *Fintiv* factors. *Id.* The Court's reliance on the infringement suit echoes this Court's cases holding that, for a petitioner to establish standing to appeal a final written decision in an inter partes review, the petitioner must face current infringement litigation or "establish that it has concrete plans for future activity that creates a substantial risk of future infringement or [will] likely cause the patentee to assert a claim of infringement." *JTEKT Corp. v. GKN Auto. LTD.*, 898 F.3d 1217, 1221 (Fed. Cir. 2018). In the Court's view, the constraining effect of an actual or likely infringement suit on the petitioner's activities supplies the necessary injury for standing. *Cf. Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1339 (Fed. Cir. 2008) ("[T]he alleged injury at the root of most justiciable declaratory judgment controversies in the patent context is a 'restraint on the free exploitation of non-infringing goods,' or an imminent threat of such restraint.").

The Court's analysis in *Apple* points in the opposite direction here. Because Apple was "a repeat player . . . on a very large scale," the volume of litigation meant that the Court could find that Apple (not some third party) expected to petition for inter partes review with respect to claims also at issue in infringement

suits, that some subset of those petitions would be denied based on the *Fintiv* factors, and that those denials would harm "the concrete interest possessed by" Apple as "an infringement defendant." 63 F.4th at 16-17. Here, in contrast, plaintiffs offer no evidence that any one of their small-business members face inter partes review or post-grant review petitions filed by unidentified third parties on a routine basis, let alone that they do so with such frequency that current guidance regarding discretionary denial will predictably lead to institution of inter partes review or post-grant review against that member. Moreover, this case differs from the *Apple* scenario in which application of the *Fintiv* factors would mean, by definition, that Apple is facing infringement suits that constrain its ability to practice the claims at issue. Here, the ultimate harm to plaintiffs' legal interests does not arise unless and until the USPTO cancels the claims in question and that judgment is affirmed on appeal, making the injury more speculative and remote.

The Court in *Apple* also analyzed redressability and found it satisfied because there was "a genuine possibility that the instructions would be changed in a way favorable to Apple in a notice-and-comment rulemaking." *Apple*, 63 F.4th at 17. As support, the Court emphasized "the fact that the Director, in response to comments, announced . . . clarifications" to its policies that were favorable to Apple. *Id.*

That redressability analysis points in the opposite direction here. *Apple* cited specific evidence that notice-and-comment rulemaking would lead to a favorable change in policy. 63 F.4th at 17. Moreover, Apple's challenge was to an existing USPTO policy that was allegedly causing injury to Apple. *See id.* at 16. Here, in contrast, plaintiffs contend that notice-and-comment rulemaking would produce new rules that would benefit them, such as a rule permitting respondents to "veto" institution, but offer no indication that the USPTO would adopt such rules. As explained, the USPTO has already embarked on notice-and-comment rulemaking and has not proposed such rules. Plaintiffs accordingly fail to meet the redressability requirement here.

Ultimately, given the volume of litigation Apple engages in, the panel appeared to conclude that any difference in the likelihood of institution was bound to produce concrete impacts to Apple's legal interests. Nothing supports a finding that the same is true here. Because plaintiffs have not even attempted to show that their members participate in the process with remotely the same frequency, the prospect of injury to any particular member is speculative and uncertain. For the same reason, the panel's observation regarding the "advantages of the IPR process" and its lower burden of persuasion to Apple as an inter partes review petitioner, *Apple*, 63 F.4th at 17, does not change the fact that injury to any one of plaintiffs'

members from participation in inter partes review or post-grant review at the

behest of a third-party petitioner is remote and speculative.

### C.    Plaintiffs' Contrary Arguments Lack Merit

1.    Perhaps recognizing the problems discussed above, plaintiffs assert

other claimed injuries, but none suffice for standing.  Plaintiffs first assert (at 28)

that they suffer injury because "a perpetual and unmitigated cloud of uncertainty

impairs the value and liquidity of patent rights."  That purported injury is merely

an impermissible increased-risk-of-harm injury in a different guise.  *See supra* pp.

25-26.  Under plaintiffs' theory, any bearer of a right with economic value could

establish standing for even the most remote and speculative injury by claiming an

impact on the present value of the right.  "Opening the courthouse to these kinds of

increased-risk claims would drain the 'actual or imminent' requirement of meaning

. . . ." *Public Citizen*, 489 F.3d at 1295.  Moreover, to the extent that plaintiffs rely

on the value of their proposed veto, it bears mention that this veto, which is only

available to "the applicant to whom the patent was originally issued," Appx61, is

non-transferrable and, thus, has no obvious connection to the liquidity of the

patents of plaintiffs' members.

Plaintiffs also assert (at 30) "current harm to reputation and good will."  But

as the district court found, plaintiffs' allegations regarding such harm are sparse

and conclusory and do not appear in the complaint.  Appx16.  They accordingly

lack the plausibility and specificity necessary to establish standing.  Moreover, as the court explained, plaintiffs appear to assert that the claimed harm can arise from the mere filing of an inter partes review or post-grant review petition, a decision that rests in the hands of third parties and is independent of the rulemaking at issue. *Id.*  And even if reputational harm attaches only at the time of institution, plaintiffs would still have to establish steps one through three of the causal chain discussed above.  That attenuated chain is too speculative to establish standing.

2.    Finally, plaintiffs devote (at 17-26) much of their brief to statistical arguments regarding the relative rates of cancellation in inter partes review and post-grant review proceedings—arguments that mostly were not presented to the district court, *see* Appx190.  They also fault (at 19-20) the district court for failing to accept as true their allegation that inter partes review and post-grant review proceedings result in higher cancellation rates than district court proceedings, and for allegedly crediting the USPTO's contrary argument.

Plaintiffs are wrong to assert that the district court was required to accept plaintiffs' standing-related statistics at face value.  *See, e.g.*, *Food & Water Watch, Inc.*, 808 F.3d at 917-18 (reviewing various problems with the plaintiffs' statistics and concluding that they "do not plausibly allege that [National Poultry Inspection System] inspection as a whole substantially increases the risk that poultry will be contaminated with *Salmonella* or *Campylobacter* compared to the existing

inspection systems"). Skepticism is warranted for several reasons, particularly the obvious difference between district-court litigation, which may be initiated on a plaintiff's say-so, and inter partes review and post-grant review proceedings, which can be instituted only if the Board first finds a likelihood of success on the merits. *See* Appx133-134. Moreover, infringement plaintiffs have incentives to assert those patents that are likely to survive an invalidity challenge, whereas petitioners for inter partes review and post-grant review have incentives to challenge patents that are likely to be found invalid.

The court also did not credit the government's statistics over plaintiffs'. Instead, the court was "hesitant to draw any sort of conclusion from these statistics given the numerous factors discussed in this Opinion that affect a third party's decision to petition the [Board] and the [Board]'s decision to institute a trial." Appx15. As the court explained, "[s]imply comparing patent challenges in an IPR/PGR to challenges in a district court is likely an apples-to-oranges comparison that fails to meet the rigor [courts] expect in a standing analysis." Appx15-16 (second alteration in original) (quoting *US Inventor Inc. v. Vidal*, No. 21-40601, 2022 WL 4595001, at *3 n.4 (5th Cir. Sept. 30, 2022) (per curiam)).

The district court's holding reflects the principle that "[a]llegations of injury based on predictions regarding future legal proceedings are . . . 'too speculative to invoke the jurisdiction of an Art[icle] III Court.'" *Platte River Whooping Crane*

*Critical Habitat Maint. Tr.*, 962 F.2d at 35 (second alteration in original) (quoting *Whitmore*, 495 U.S. at 157). Plaintiffs' invocation of new statistics in this Court does not change the fact that plaintiffs' "'highly attenuated chain of possibilities' as to agency, court, and third-party action," Appx17 (quoting *Clapper*, 568 U.S. at 410), is too speculative to satisfy the requirements of Article III.

## CONCLUSION

For the foregoing reasons, the Court should affirm the judgment of the district court.

Respectfully submitted,

*Of Counsel:*

FARHEENA Y. RASHEED
*Acting Solicitor*

MICHAEL S. FORMAN
*Associate Solicitor*
*Office of the Solicitor*
*U.S. Patent and Trademark Office*
*Mail Stop 8, P.O. Box 1450*
*Alexandria, Virginia 22313*
*(571) 272-9035*

BRIAN M. BOYNTON
*Principal Deputy Assistant*
*Attorney General*

JOSHUA M. SALZMAN

s/ Weili J. Shaw
WEILI J. SHAW
*Attorneys, Appellate Staff*
*Civil Division, Room 7240*
*U.S. Department of Justice*
*950 Pennsylvania Ave., NW*
*Washington, DC 20530*
*(202) 514-1371*

JUNE 2024

## CERTIFICATE OF SERVICE

I hereby certify that on June 20, 2024, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit by using the appellate CM/ECF system.  Service will be accomplished by the appellate CM/ECF system.

s/ Weili J. Shaw
WEILI J. SHAW

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 9,223 words.  This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Times New Roman 14-point font, a proportionally spaced typeface.

s/ Weili J. Shaw
WEILI J. SHAW