# United States Court of Appeals for the Federal Circuit

---

**US INVENTOR, INC., NATIONAL SMALL BUSINESS UNITED,**
*Plaintiffs-Appellants*

**v.**

**UNITED STATES PATENT AND TRADEMARK OFFICE, JOHN A. SQUIRES, UNDER SECRETARY OF COMMERCE FOR INTELLECTUAL PROPERTY AND DIRECTOR OF THE UNITED STATES PATENT AND TRADEMARK OFFICE,**
*Defendants-Appellees*

---

2024-1396

---

Appeal from the United States District Court for the District of Columbia in No. 1:22-cv-02218-JDB, Judge John D. Bates.

---

Decided: October 3, 2025

---

ROBERT GREENSPOON, Dunlap Bennett & Ludwig PLLC, Chicago, IL, argued for plaintiffs-appellants. Also represented by JONATHAN HILL, Roetzel & Andress, LPA, Chicago, IL.

WEILI J. SHAW, Appellate Staff, Civil Division, United

States Department of Justice, Washington, DC, argued for defendants-appellees. Also represented by BRIAN M. BOYNTON; MICHAEL S. FORMAN, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA. Defendant-appellee John A. Squires also represented by FARHEENA YASMEEN RASHEED.

---

Before LOURIE, REYNA, and STARK, *Circuit Judges*.

REYNA, *Circuit Judge*.

US Inventor, Inc. and National Small Business United jointly filed a petition for rulemaking to establish criteria to limit the authority of the United States Patent and Trademark Office to institute inter partes or post-grant review under the America Invents Act. The United States Patent and Trademark Office denied the petition. Appellants filed a complaint in the United States District Court for the District of Columbia, alleging that the denial violated the Administrative Procedure Act and the America Invents Act. The district court dismissed for lack of standing. For the reasons set forth below, we affirm.

## BACKGROUND

In August 2020, US Inventor, Inc. and National Small Business United (collectively, "appellants") jointly filed a petition for rulemaking to establish criteria for limiting the discretionary authority of the United States Patent and Trademark Office ("PTO") to institute inter partes review ("IPR") and post-grant review ("PGR") under the America Invents Act ("AIA"). J.A. 49–68. The proposed rule would amend IPR and PGR regulations, namely 37 C.F.R. §§ 42.108 and 42.208, to add a "new subsection (d)" providing that, "[n]otwithstanding subsection (c)," an IPR or PGR "shall not be instituted if the patent owner objects and" at least one of five requirements is met. J.A. 60–62. One such requirement, which contains three parts, is that the patent owner:

> (A) was the applicant to whom the patent was originally issued;
>
> (B) claimed small entity or micro entity status at the time the patent was issued; and
>
> (C) actually reduced one or more of the challenged claims to practice.

J.A. 61–62.

In October 2020, unrelated to appellants' petition, the PTO issued a request for comments on exercising discretion not to institute IPR or PGR. *Request for Comments on Discretion to Institute Trials Before the Patent Trial and Appeal Board*, 85 Fed. Reg. 66502 (Oct. 20, 2020).

In October 2021, the PTO denied appellants' petition. J.A. 70–72. The PTO explained that while it "supports the goal of providing clarity as to institution standards," the "issues raised in the [p]etition overlap those raised in the" October 2020 request for comments. *Id.* Consequently, the PTO wrote that the petition's suggestions "will be considered as part of any future rulemaking" related to institution of IPR and PGR. J.A. 72.

In July 2022, appellants filed a complaint against the PTO in the United States District Court for the District of Columbia for denying their petition for rulemaking. J.A. 26–47. Appellants argued that in denying their petition, the PTO committed three errors. First, the PTO failed to "conclude a matter presented to it" "within a reasonable time" under the Administrative Procedure Act ("APA") (5 U.S.C. § 555(b)), because the PTO's denial only promised consideration of the petition's suggestions "in unspecified 'future rulemaking.'" J.A. 44–46. Second, the PTO failed to provide "a brief statement of the grounds for denial" under the APA (5 U.S.C. § 555(e)), because the PTO's promise to consider the petition's suggestion in a future rulemaking was not a "statement of the grounds for denial" and was arbitrary and capricious. J.A. 44–45.

Third, the PTO failed to promulgate notice-and-comment rulemaking as required by the AIA's "statutory framework," referring to 35 U.S.C. §§ 2(b)(2), 315(d), 316(a) and (b), 325(d), and 326(a). J.A. 43–45. Accordingly, appellants requested that the district court declare that the PTO violated the APA and AIA when it denied their petition for rulemaking; vacate the PTO's denial of the petition; and order that the PTO "promptly act to conclude the matter presented" in the petition. J.A. 46. In September 2022, the PTO filed a motion to dismiss appellants' complaint, arguing that they lacked standing. J.A. 110–40.

In April 2023, unrelated to appellants' complaint, the PTO issued an advance notice of proposed rulemaking regarding, in part, possible changes to the PTO Director's discretionary authority to deny institution. *Changes Under Consideration to Discretionary Institution Practices, Petition Word-Count Limits, and Settlement Practices for America Invents Act Trial Proceedings Before the Patent Trial and Appeal Board*, 88 Fed. Reg. 24503 (Apr. 21, 2023) ("*ANPRM*").

In July 2023, the district court granted the PTO's motion to dismiss. *US Inventor, Inc. v. U.S. Pat. & Trademark Off.*, 2023 WL 4488913, at *4–8 (D.D.C. July 12, 2023) ("*US Inventor*"). The district court decided that appellants lacked organizational and associational standing. *Id.* With respect to associational standing, the district court concluded that appellants failed to show that at least one member of their organizations would have standing to sue because appellants' "theory of injury is too speculative to describe a concrete injury from [PTO's] denial of their petition." *Id.* at *8. The district court explained that appellants "relied on a specific, uncertain series of events based on conjecture about how independent third parties, i.e. the [Patent Trial and Appeal Board ('PTAB')] and a district

court, would act." *Id.* (citation modified). In September 2023, appellants filed a notice of appeal. J.A. 255.[1]

In April 2024, the PTO issued a notice of proposed rulemaking on changes to the Director's discretionary authority to deny institution, partly "in light of stakeholder feedback received in response to" the ANPRM from April 2023. *Patent Trial and Appeal Board Rules of Practice for Briefing Discretionary Denial Issues, and Rules for 325(d) Considerations, Instituting Parallel and Serial Petitions, and Termination Due to Settlement Agreement*, 89 Fed. Reg. 28693, 28694 (Apr. 19, 2024) ("*NPRM*").

## DISCUSSION

Appellants argue that the district court erred in dismissing their complaint for lack of standing. Specifically, appellants argue that they have associational standing.[2] Appellants Br. 17–35. For the following reasons, we disagree.[3]

---

[1] Appellants initially appealed to the United States Court of Appeals for the District of Columbia Circuit, J.A. 255, which then granted the PTO's motion to transfer to this court. *US Inventor, Inc. v. U.S. Pat. & Trademark Off.*, 2024 WL 1021257, at *1 (D.C. Cir. Jan. 23, 2024).

[2] Appellants do not appeal the district court's determination that they lack organizational standing.

[3] The PTO also argues that its issuance of the 2024 NPRM moots this appeal because the NPRM proposes to regulate matters addressed in appellants' petition for rulemaking. Appellees Br. 15–19. As we decide that appellants lack standing, we do not reach mootness. *See Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 191 (2000) ("[I]f a plaintiff lacks standing at the time the action commences, the fact that the dispute is capable of repetition yet evading review will not entitle the

"We apply regional circuit law to our review of a dismissal of a complaint for lack of standing unless the issue is unique to patent law and therefore exclusively assigned to the Federal Circuit." *Univ. of S. Fla. Rsch. Found., Inc. v. Fujifilm Med. Sys. U.S.A., Inc.*, 19 F.4th 1315, 1323 (Fed. Cir. 2021); *see Int'l Nutrition Co. v. Horphag Rsch. Ltd.*, 257 F.3d 1324, 1328 (Fed. Cir. 2001). The D.C. Circuit reviews dismissals for lack of standing de novo. *Hardaway v. D.C. Hous. Auth.*, 843 F.3d 973, 977 (D.C. Cir. 2016). Consequently, we review this appeal de novo.

"The doctrine of standing is one of several doctrines that reflect" the "fundamental limitation" of Article III of the U.S. Constitution, which "restricts [the judicial power] to . . . redress or prevent actual or imminently threatened injury to persons caused by private or official violation of law." *Summers v. Earth Island Inst.*, 555 U.S. 488, 492–93 (2009). The plaintiff "bears the burden of showing that he has standing for each type of relief sought." *Id.* at 493. The D.C. Circuit has "h[e]ld that a plaintiff may cure a standing defect under Article III through [a supplemental] pleading alleging facts that arose after filing the original complaint." *Scahill v. District of Columbia*, 909 F.3d 1177, 1184 (D.C. Cir. 2018) (discussing Federal Rule of Civil Procedure 15(d)); *accord Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1337 (Fed. Cir. 2008) (assessing subject matter jurisdiction based on a supplemented complaint).

Standing requires (1) that the plaintiff "suffered an injury in fact"; (2) "a causal connection between the injury

---

complainant to a federal judicial forum."). We also note that the PTO concedes that "[b]oth mootness and standing are threshold jurisdictional questions, and this court can take up either one of them first." Oral Arg. at 14:48–54, *available at* https://oralarguments.cafc.uscourts.gov/default.aspx?fl=24-1396_07072025.mp3.

and the conduct complained of"; and (3) that the injury is "likely" to be "redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (citation modified). An injury in fact is "an invasion of a legally protected interest" that is "concrete and particularized," and "actual or imminent," but not "conjectural or hypothetical." *Id.* at 560 (citation modified). When "analyzing standing issues," a court applying D.C. Circuit law "must accept as true all material allegations of the complaint," but a plaintiff seeking a federal forum must allege "facts," not "predictions." *United Transp. Union v. ICC*, 891 F.2d 908, 911–13 (D.C. Cir. 1989) (citation modified). Accordingly, "[w]hen considering any chain of allegations for standing purposes," we "may reject as overly speculative those links which are predictions of future events (*especially future actions to be taken by third parties*)." *Id.* at 912 (emphasis added). "[T]hose types of allegations . . . are not normally susceptible of labelling as true or false," and the D.C. Circuit's "authority to reject as speculative allegations of future injuries is well-established." *Id.* (citation modified); *see also Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015). Relevant to this appeal, "the grant of a procedural right alone," like that to petition for rulemaking, "cannot serve as the basis for Article III standing unless the procedures in question are designed to protect some threatened concrete interest of petitioners' that is the ultimate basis of his standing." *Gettman v. Drug Enf't Admin.*, 290 F.3d 430, 433 (D.C. Cir. 2002) (citation modified).

Advocacy organizations like appellants have associational standing if "(1) at least one of their members would have standing to sue; (2) the interests they seek to protect are germane to the organizations' purposes; and (3) neither the claim asserted nor the relief requested requires the participation of individual members." *Sierra Club v. EPA*, 754 F.3d 995, 999 (D.C. Cir. 2014). On appeal, the only standing requirement at issue is the first: whether at least

one member of appellants' organizations would have had standing to sue at the time the complaint was filed.

Here, appellants lack associational standing because they fail to show that at least one of their members would have standing to sue. *See id.*; *US Inventor*, 2023 WL 4488913, at *5–8. Specifically, they do not show that any of their members suffers a non-speculative injury in fact from the PTO's denial of appellants' petition for rulemaking. Appellants argue that, due to the PTO's denial of their petition, their members suffer the injury of "the risk of cancellation of a patent and/or patent claim as a result of institution." J.A. 191; *see* Appellants Br. 7, 15–16. However, there is no showing that the risk of cancellation to any one member of appellants' organizations is "actual or imminent" in the absence of appellants' proposed rulemaking. *See Lujan*, 504 U.S. at 560. To the contrary, the alleged injury is "conjectural or hypothetical." *Id.* (citation modified).

As the district court explained, an extended chain of events would have to occur before the PTO's denial of appellants' petition would harm a member by resulting in the risk of cancellation. *See US Inventor*, 2023 WL 4488913, at *6; *see also Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410–11 (2013) (finding lack of standing where plaintiffs' alleged injury "rest[ed] on their highly speculative fear" that five-part "chain of contingencies" would occur). Because, as we discuss below, one or more of the events in this chain are speculative, appellants have failed to meet their burden to show they have standing to pursue the relief they seek. *See Clapper*, 568 U.S. at 410–11 (noting that plaintiffs did not have standing because, under the facts alleged, a single link in five-step "chain of contingencies" amounted to "mere speculation"). First, a third party must file a petition for IPR or PGR on claims in a patent or patents owned by a member of appellants' organizations. *US Inventor*, 2023 WL 4488913, at *6. Second, the IPR or PGR petition must satisfy minimum standards for institution,

as provided under 35 U.S.C. §§ 314(a) and 324(a). *Id.* Third, the Board must exercise the Director's discretionary authority to grant institution of IPR or PGR under current PTO guidance, despite the patent owner meeting one of the requirements proposed in appellants' petition for rulemaking. *Id.* Fourth, institution must increase the probability that the Board would cancel the challenged patent or claims as compared to alternative proceedings, such as district court litigation.[4] *Id.* Even taking the well-pled factual allegations in appellants' operative complaint as true, one or more of the links in this chain are speculative, so they lack standing. *See Clapper*, 568 U.S. at 410–11.

The first required event in the chain is that a *third party* must file a petition challenging the patentability of a patent owned by a member of appellants' organizations. This step is especially speculative because it is entirely within a third party's control. *See US Inventor*, 2023 WL 4488913, at *6; *Food & Water Watch*, 808 F.3d at 913.

Strikingly, while the operative complaint and its attachments contain allegations of the harm that appellants' members may suffer when a third party files such a petition, *see, e.g.*, J.A. 27–28, 98, 102–03, it contains next to nothing showing that any specific member will in the future see its patents be the subject of a petition.

While the highly speculative nature of this first step is sufficient grounds on which to affirm the district court, we briefly discuss two other steps as well given that they raise issues related to the first step. At the second step—which, again, is the requirement that the IPR or PGR petition satisfy the minimum merits-based standards for institution,

---

[4] As noted, standing is lacking where one or more of the links in the chain are speculative. Because we find this appeal dispositive as to the first three steps, we do not address the fourth step.

such that the petition is not rejected for lack of merit—it is incontestable that the content of any petition is within the control of the third parties that draft such petitions. In addition, once a petition has been drafted and submitted, a different third party, the Board, may deny an IPR or PGR petition based on the statutory requirements for institution—*before* the Board even has the chance to consider denial based on any new regulations that the PTO may adopt in following appellants' proposed rulemaking. *See US Inventor*, 2023 WL 4488913, at *6. As a result, the new regulations sought by appellants may not even make a difference in whether the Board decides to institute. *See Food & Water Watch*, 808 F.3d at 913. Thus, it remains speculative whether agency action that "conclude[s] the matter presented" in appellants' proposed rulemaking, J.A. 46, would actually increase the rate of denial of institution.

At the next step, even if a third party files a petition meeting the merits requirements for institution, the Board may nevertheless deny institution based on its current scope of discretion, which does not incorporate the restrictions contemplated by appellants' proposed regulations. To the extent the Board might already exercise its discretion to deny institution of meritorious petitions directed at patents held by appellants' members, they have failed to allege facts showing any concrete and particularized injury from the absence of their desired regulation.

In sum, one or more of the events in the causal chain of events that must occur to result in injury is highly speculative, especially because appellants largely depend on "future actions to be taken by third parties," including IPR or PGR petitioners and the Board. *See United Transp. Union*, 891 F.2d at 912. Accordingly, the alleged future injury due to the purported risk of cancellation of appellants' members' patents or patent claims is insufficient because the assertion of injury "involves a significant degree of guess work." *Apple Inc. v. Vidal*, 63 F.4th 1, 16 (Fed. Cir. 2023),

*cert. denied sub nom. Intel Corp. v. Vidal*, 144 S. Ct. 548 (2024) (citation modified). As a result, this alleged injury is not "certainly impending," and there is no "substantial risk that the harm will occur." *Id.* (citations omitted).

Appellants argue that a member of US Inventor, 10Tales, suffers imminent harm of the risk of cancellation. Appellants Br. 33–35. Appellants focus on a petition for IPR of a patent owned by 10Tales. *Id.*; *see* J.A. 93–94. According to appellants, the Board denied institution on the merits, but 10Tales still suffers imminent harm because it now faces a "renewed threat" of cancellation if the petitioner files for reconsideration "without the benefit of regulations proposed to insulate small business from such assaults." Appellants Br. 33. However, as appellants conceded below, the Board "denied institution *on the merits*," J.A. 94 (emphasis added), without reaching the discretionary factors at issue in appellants' petition for rulemaking. *US Inventor*, 2023 WL 4488913, at *7. Hence, at best for appellants, reconsideration only restarts the causal chain, setting it back to the first step, which is inadequate for all the reasons we have already explained. Accordingly, the operative complaint does not allege facts demonstrating that 10Tales could plausibly believe that its patent will be the subject of a subsequent challenge before the Board.

In appellants' opening brief, 10Tales is the only member of appellants' organizations that they allege suffers injury in fact. Appellants Br. 33–35. In appellants' reply brief, they also argue that various other named members suffer injury in fact because they have been the subject of IPRs or PGRs since the complaint was filed and thus face risk of cancellation. Appellants Reply Br. 2–5, 8–13. Appellants did not make these arguments in their opening brief, which means we could treat them as waived. *See SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1319 (Fed. Cir. 2006).

Appellants also assert that the petitions for IPR and PGR of the patents owned by named members other than 10Tales establish standing because they show that appellants' members in general are "repeat player[s]," as in *Apple*, 63 F.4th at 16, whose risk of cancellation is "capable of repetition yet evading review." Appellants Reply Br. 1–2; *see id.* at 4–5, 11. But there is no showing that any one of appellants' members is a repeat player. Moreover, whether a disputed activity is "capable of repetition yet evading review" is an exception to mootness, not a basis for standing. *See Friends of the Earth*, 528 U.S. at 190–91.

Appellants further argue that this case is no different than *Apple*, in which we found standing. Appellants Br. 1–3. In *Apple*, we concluded that Apple had standing to challenge the Director's guidance instructing the Board to consider certain factors when exercising discretion to institute IPRs on claims also at issue in parallel infringement lawsuits. *Apple*, 63 F.4th at 16–17 (addressing the "*Fintiv* factors," *see Apple Inc. v. Fintiv, Inc.*, 2020 WL 2126495, at *2 (P.T.A.B. Mar. 20, 2020) (precedential)). The dispositive fact in *Apple* is that Apple is a *repeat player* and on a very large scale, as it has been sued for infringement on a regular basis, for many years, and Apple regularly petitions for an IPR of patent claims at issue in such suits. *Id.* Apple's complaint also contained detailed allegations of past harm, which can be probative of standing based on the threat of future conduct. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) ("Past wrongs" may be "evidence bearing on whether there is a real and immediate threat of repeated injury." (citation modified)).

Thus, we explained that Apple was very likely to repeatedly petition for IPR of patent claims asserted in infringement suits against it. *Apple*, 63 F.4th at 17. Accordingly, Apple had a "concrete stake" and a "far from speculative" risk of future injury. *Id.* We concluded that Apple plausibly alleged that the Director's guidance would "cause more denials of institution than might otherwise

occur," and, as a result, the guidance would "continue causing harm in the form of denial of the benefits of IPRs linked to the concrete interest possessed by an infringement defendant." *Id.* This amounted to a "substantial risk that the harm would occur." *Id.* (citation modified). In other words, we concluded that it was not speculative that Apple would be sued for infringement, would petition for IPR to defend against assertions of unpatentability, and then would be denied institution on the basis of the challenged guidance.

In contrast, appellants have not shown that third parties regularly file petitions for IPR or PGR against any single one of its members. Nor have they alleged past harm of the kind that could be probative of future, non-speculative harm. We also note that, in *Apple*, Apple itself was the party that repeatedly petitioned for IPR, leading to the likely harm of *denial* of institution under its *own* petitions. By contrast, in the present appeal, the party that would petition for IPR or PGR would be an unidentified *third party*, not a member of appellants' organizations, and the asserted harm is risk of cancellation due to the decision to institute, not denial of institution.

Appellants also argue that their right to petition for rulemaking is a procedure "designed to protect some threatened concrete interest," *Gettman*, 290 F.3d at 433, because the PTO's denial of the petition "directly affected" their members' "property rights." Appellants Br. 26–27. However, the ability to petition for rulemaking before the PTO does not inherently protect patent owners' property rights. As explained, appellants fail to show that any one of their members have a "concrete interest apart from the procedural injury." *Fund Democracy, LLC v. SEC*, 278 F.3d 21, 28 (D.C. Cir. 2002).

We thus conclude that appellants lack associational standing.

## CONCLUSION

We have considered the parties' remaining arguments and find them unpersuasive. For the foregoing reasons, we affirm the district court's judgment dismissing appellants' complaint for lack of standing.

**AFFIRMED**